FRANK D. SCOTELLA and GORDON RANDOLPH LOGAN, Plaintiffs-Appellants, *v.* BRADLEY D. OSGOOD, II, and JOYCE A. OSGOOD, husband and wife, and BEATRICE K. OSGOOD, Defendants-Appellees

NO. 8155

(CIVIL NO. 2030)

FEBRUARY 17, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiffs-Appellants Frank D. Scotella and Gordon Randolph Logan (Buyers) sued defendants-appellees Bradley D. Osgood, II, Joyce A. Osgood, and Beatrice K. Osgood (Sellers) for specific performance of a land purchase contract. The trial court denied specific performance and Buyers appeal. We reverse.

The dispositive issue is whether in a land purchase contract[1] where time is of the essence the Buyers' failure to perform on time prevents them from obtaining specific performance. In light of *Kaiman Realty, Inc. v. Carmichael,* 65 Haw. 637, 655 P.2d 872 (1982), *supplemented on reconsideration* (January 31, 1983), and *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), the answer is that it may hinder but it does not prevent.

On April 5, 1978, Buyers executed a Hawaii Association of Realtors 1971 form entitled "Deposit, Receipt, Offer and Acceptance" (DROA) and offered to purchase from the Sellers Unit No. 5, Hanalei Bay Villas, Princeville, Kauai, for $79,000 payable as follows: $16,000 from the Buyers and $63,000 "by way of a first mortgage obtained from a reputable lending institution."

Paragraph 5 of the DROA states:

5. Buyer and Seller shall perform all their obligations set forth herein on or before July 15, 1978. Buyer and Seller both agree that this time may be extended for a period of 30 days at the discretion of the Seller's Broker. All documents shall be recorded within a reasonable time therefore, and upon such recordation, the net proceeds shall be disbursed to seller.

Paragraph 12 of the DROA states in part:

12. SPECIAL CONDITIONS: . . . Offer is contingent on buyers receiving adequate financing within (1) one month of sellers acceptance.

The offer was "binding if accepted by Seller before 12:00 p.m., April 15, 1978[.]"

The Sellers increased the price to $80,500, signed the DROA, and on April 20, 1978, mailed it to their broker. Thereafter, the down payment figure was changed to $17,500. The Buyers accepted this counteroffer. Security Title Corporation opened an escrow account on May 1, 1978.

---

[1] The phrase "land purchase contract" encompasses any contract for the purchase of land whether or not improvements are included.

On or about June 29, 1978, the Buyers' bank advised them that their mortgage loan application was approved subject to an appraisal to be submitted by the Buyers. The bank did not receive the appraisal until July 28, 1978.[2]

By letter dated July 20, 1978, the Sellers advised escrow that they were cancelling the contract because the sale did not close on or before July 15, 1978. Escrow received this letter on July 24, 1978 and informed the Buyers the next day. The Buyers denied the Sellers' right to cancel and deposited all necessary funds and documents with escrow on August 1, 1978, seventeen days after the July 15, 1978 agreed upon closing date. The Sellers refused to consummate the sale, and the Buyers sued for specific performance which, after a trial, the lower court denied.

The Buyers assert the following points on appeal:

A. Conclusion of law no. 1 is erroneous. It states:

1. The language of the DROA, "offer is contingent on buyers receiving adequate financing within (1) one month of sellers (sic) acceptance," made Plaintiffs' offer "contingent" on obtaining the required financing. The contractual obligations of the parties were thus made conditional. The Plaintiffs failed to perform an obligation required of them, a condition precedent; therefore, no true contract ever existed between the parties, and Plaintiffs stand in no position to obtain specific performance thereof.

B. Conclusion of law no. 2 is a finding of fact and is clearly erroneous. It states:

2. Although the DROA did not expressly stipulate that "time is of the essence," the contract taken as a whole, at a time when real estate prices were rising very fast on Kauai, together with Plaintiffs' numerous inquiries by telephone

---

[2] With respect to the appraisal, Jack Ewing, Buyers' agent, testified that he and the bank had previously agreed that Nap Hardenbergh would do the appraisal. Upon receipt of the bank's June 29, 1978 notice, he told Hardenbergh to go ahead with the appraisal and that he needed it "by July 12th." When Ewing did not receive the appraisal by July 12th, he called and was informed that Hardenbergh "was gone to Tahiti." Thereafter, Ewing "left the obtaining of the appraisal" to his broker, Mike Noonan.

to various persons concerning the status of this transaction, indicated that time was of the essence. The Plaintiffs were to have a firm mortgage commitment within one month of the sellers acceptance, and certainly before the date set for closing. The Defendants, within a reasonable period of time after learning of Plaintiffs' failure to perform their condition precedent, gave timely notice of cancellation of the contract. Security Title Corporation, as escrow and as agent for both the Plaintiffs and the Defendants, was a proper party to receive the notice.

C. Even if time is of the essence, the Sellers cannot complain of the Buyer's default because the Sellers were not ready to close on or before the closing date.[3]

D. It is inequitable to deny to the Buyers specific performance of the contract when the Sellers can easily be compensated in monetary damages for the Buyers' failure to perform on time.

### POINT ON APPEAL A

The Buyers contend that the lower court found that the financing condition was "solely" for the benefit and protection of the Buyers and that this finding entitled the Buyers to waive that condition and enforce the contract without it.

Admittedly, a condition precedent may be waived by a party to a contract "if it is solely for his benefit." *Gum v. Nakamura*, 57 Haw. 39, 549 P.2d 471 (1976). That question is a question of fact. *Id.* In the instant case, however, finding of fact no. 8 states:

> 8. The condition that the "offer is contingent on buyers receiving adequate financing" to pay for the purchase of the property was for the benefit and protection of the Buyers, who had the right to rescind the contract if they were unsuccessful in obtaining the required financing.

---

[3] *See* n. 6, *Kaiman Realty, Inc. v. Carmichael*, 2 Haw. App. 499, 634 P.2d 603 (1981), *revd. in part*, 65 Haw. 637, 655 P.2d 872 (1982), *supplemented on reconsideration* (January 31, 1983), and *Continental Developers v. Hensel*, 57 Haw. 570, 560 P.2d 1306 (1977).

It does not say whether or not the condition precedent was "solely" for the benefit of the Buyers. *Cf. Anderson v. Oceanic Properties, Inc.,* 3 Haw. App. 350, 650 P.2d 612 (1982). Consequently, it is insufficient for application of the rule in *Gum v. Nakamura, supra,* and does not invalidate conclusion of law no. 1.

### POINTS ON APPEAL B, C, AND D

As a general rule, it is the function of courts to construe and enforce contracts made by the parties, and not to make or alter them, *Strouss v. Simmons,* 66 Haw. ___, (No. 6960, December 30, 1982). A different rule is applied when deciding whether or not to decree specific performance for a vendee who has materially breached a land purchase contract.[4] *Kaiman Realty, Inc. v. Carmichael, supra; Jenkins v. Wise, supra.* From those cases, we understand the rule to be as follows:

1. The rule applies with equal force to agreements of sale as in *Jenkins v. Wise, supra,* and to DROAs as in *Kaiman Realty, Inc. v. Carmichael, supra.*[5]

---

[4] According to 71 Am. Jur. 2d *Specific Performance* § 1 (1973):

The remedy of specific performance of contracts is given as a substitute for the legal remedy of damages, or monetary compensation, whenever the legal remedy is inadequate or impracticable. Where the remedy at law is not adequate, equity assumes jurisdiction, to decree specific performance, in order to prevent the travesty of justice involved in permitting parties to refuse performance of their contracts at pleasure by electing to pay inadequate damages for the breach. [Citations omitted.]

If time is of the essence under the contract, may the vendee who has materially breached the contract by failing to comply with a deadline obtain damages at law for the vendor's nonperformance? *See* n. 3, *supra;* 17 Am. Jur. 2d *Contracts* § 332 (1964); 71 Am. Jur. 2d *Specific Performance* § 64 (1973). If the vendee is not entitled to a remedy at law, we do not know on what basis he is entitled to specific performance. *See* 27 Am. Jur. 2d *Equity* § 86 (1966).

[5] This rule is applicable to land purchase contracts. Whether and to what extent it applies to other kinds of contracts is not an issue in this case.

2. Whether and to what extent relief should be granted rests within the sound discretion[6] of the trial court.

3. If the vendee's breach has been due to gross negligence, or to deliberate or bad faith conduct on his part, specific performance should not be awarded.

4. If the vendor cannot be reasonably and adequately compensated for his injury,[7] specific performance should not be awarded.

5. If an inequitable forfeiture would occur if specific performance is denied, the trial court "will generally" award specific performance.

6. The standards to be used by the trial court in deciding whether an inequitable forfeiture would occur if specific performance is denied are imprecise.[8]

7. Depending on the context in which it is used, the word "forfeiture" may mean the loss of cash paid, and/or the loss of the benefit of the bargain. However, even if the trial court declines to grant relief from cancellation of the contract, it may order the return of that portion of the money paid which would constitute a penalty rather than reasonable liquidated damages.

Consequently, we are constrained to remand this case to the trial court to determine:

1. Whether the Buyers' breach has been due to gross negligence, or to deliberate or bad faith conduct;

2. Whether the Sellers can reasonably and adequately be compensated for their injury;

3. Whether an inequitable forfeiture would occur if specific performance is denied;

---

[6] The trial court's discretionary decisions will be reversed on appeal only when it is established that the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party. *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw.App. 265, 630 P.2d 642 (1981).

[7] What the vendor's injury is and what is reasonable and adequate compensation are matters to be proved at trial.

[8] For guidance, *see Jenkins v. Wise, supra,* especially footnote 3, and *Kaiman Realty, Inc. v. Carmichael, supra.*

26

4. Whether in the exercise of its equitable discretion, the lower court will decree specific performance of the DROA notwithstanding the Buyers' material breach thereof; and

5. What other discretionary equitable relief, if any, it will grant or deny.

Reversed and remanded for further proceedings consistent with this opinion.

*Paul A. Schraff* (*John R. Dwyer, Jr.,* with him on the brief; *Carlsmith & Dwyer* of counsel) for plaintiffs-appellants.

*Calvin K. Murashige* (*Clinton I. Shiraishi* with him on the brief; *Shiraishi & Yamada* of counsel) for defendants-appellees.