**Janine Naomi OTANI, Plaintiff,**

v.

**STATE FARM FIRE & CASUALTY CO.,** Sandra Gomes, Claims Representative and Julie Quinn, Claims Supervisor, John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Roe Non–Profit Organizations 1–10, and Roe Governmental Entities 1–10, Defendants,

and

State of Hawaii, Intervenor–Defendant.

CV. NO. 95–00291 DAE.

United States District Court,
D. Hawai'i.

May 20, 1996.

Jacob M. Merrill, Gary D. Weingarden, William Harrison Elkner, Law Offices of William H. Elkner, Honolulu, HI, for plaintiff.

Lennes N. Omuro, Goodsill Anderson Quinn & Stifel, Alii Plaza Honolulu, HI, for defendants.

David A. Webber, Office of the Attorney General—State of Hawaii, Honolulu, HI, for State of Hawaii.

### ORDER

DAVID ALAN EZRA, District Judge.

The court heard Plaintiff's and Defendants' Motions on April 22, 1996. William Elkner, Esq., and Jacob M. Merrill, Esq., appeared on behalf of Plaintiff; Lennis N. Omuro, Esq., appeared on behalf of Defendant State Farm Fire & Casualty Co. ("State Farm") and Deputy Attorney General David A. Webber appeared on behalf of Intervenor–Defendant, the State of Hawaii ("Hawaii"). After reviewing the motion and the supporting and opposing memoranda, the court GRANTS State Farm's Motion to Dismiss, GRANTS Hawaii's Motion to Dismiss Constitutional Claims, and DENIES Plaintiff's Motion for Partial Summary Judgment.

### BACKGROUND

Plaintiff was involved in an automobile accident on December 16, 1992 ("accident"). Plaintiff allegedly suffered bodily injury and submitted a claim for no-fault insurance benefits to State Farm.

State Farm paid benefits for chiropractic treatment from December 1992 until February 1993 and for acupuncture treatment during September and October 1993. Nearly a year after the accident, State Farm received a no-fault treatment plan dated December 3, 1993 from chiropractor, Gina Whest ("Whest"), of Scientific Chiropractic Clinic. The treatment plan requested additional continuing chiropractic adjustments scheduled from December 3, 1993 until March 24, 1994.

State Farm submitted the chiropractic treatment plan to peer review by Peer Review Challenge dated December 7, 1993, pursuant to and in accordance with Hawaii no-fault law. State Farm also requested Plaintiff to submit to an independent medical examination ("IME"). According to State Farm, it sent Plaintiff a reservation of rights letter dated February 1, 1994 when Plaintiff failed to respond to its request in reasonable time. Several days after the reservation letter was issued, Plaintiff, through her attorney, contacted State Farm and agreed to submit to an IME; State Farm made arrangements for Plaintiff to see Dr. Jeffrey Korchek on March 19, 1994. Plaintiff, again through a letter from counsel, informed State Farm that she would not submit to the IME—because, this time, she objected to the selection of doctors. Construing Plaintiff's letter as a refusal to submit to a legitimately requested IME, State Farm issued a denial of all benefits pending the conduct, results, and findings of an IME.

State Farm received two more no-fault treatment plans dated April 15, 1994 and July 8, 1994 from Whest requesting chiropractic adjustments from April 24, 1994 to July 21, 1994 and from July 22, 1994 to November 4, 1994 respectively. State Farm denied all three treatment plans, allegedly based on the Peer Review Report which concluded that the proposed chiropractic treatment "is of no curative value and, at most, offers temporary palliation." State Farm's Opposition to Plaintiff's Motion, Exh. K, at 3.

State Farm claims that it should prevail in this litigation because (a) Plaintiff fails to state a claim upon which relief can be granted, and (b) it has fully complied with the provisions of the contract and with applicable no-fault laws by paying all benefits owed Plaintiff under the Policy.

Plaintiff contests the constitutionality of the peer review process as well as State Farm's application of the recent legislation to her case.

### PROCEDURAL HISTORY

Plaintiff initially filed her claim in state court seeking relief from State Farm and certain of its employees. The state court granted defendants' motion to dismiss Plaintiff's claims against the individual employees. Plaintiff filed an amended complaint on November 15, 1994 ("Amended Complaint"). On April 18, 1995, State Farm removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. There is original diversi-

ty jurisdiction in this court under 28 U.S.C. § 1332.

On May 18, 1995, Plaintiff moved for remand back to state court; this court denied that petition on July 13, 1995. Additionally, the court refused to certify the denial of remand on grounds that it was not a controlling question of law. On September 9, 1995, this court entered an order granting Defendant State Farm's Motion for Partial Dismissal with Prejudice and DISMISSED Counts II, VI, and VIII of Plaintiff's Amended Complaint.

On December 19, 1995, the parties stipulated to allow Hawaii to intervene as Intervenor–Defendant pursuant to 28 U.S.C. § 2403(b). On January 30, 1996, Hawaii filed a motion to dismiss Plaintiff's constitutional claims. State Farm joined in that motion.

That same day, State Farm moved for dismissal with prejudice or in the alternative for summary judgment on the remaining counts in Plaintiff's Amended Complaint, and Plaintiff filed a Motion for Partial Summary Judgment.

### STANDARD OF REVIEW

#### I. Motion to Dismiss

■ A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994).

■ A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle ·[her] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.* Civil rights complaints are to be liberally construed. *Id.* (citing *Gobel v. Maricopa County,* 867 F.2d 1201, 1203 (9th Cir.1989)).

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

#### II. Summary Judgment

■ Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

■ A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder

could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513–14. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

▇▇▇ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

### I. STATE FARM'S MOTION TO DISMISS

#### A. *Breach of Contract Claims*

▇▇▇ State Farm argues that Plaintiff's claims for breach of contract (Count IV) and tortious breach of contract (Count V) must be dismissed because Plaintiff cannot point to any specific provision of the contract that was breached. State Farm relies on *Au v. Au,* 63 Haw. 210, 221, 626 P.2d 173, *recon. denied,* 63 Haw. 263 (1981) and *Hataishi v. State Farm Mutual Automobile Insur. Co.,* Civil No. 95–00732 HG to support its claim that dismissal is appropriate when Plaintiff's complaint fails to enumerate a specific breach of the insurance contract. State Farm, alternatively, argues that Plaintiff is not entitled to further benefits because she breached a condition precedent to coverage

by refusing to submit to a reasonably requested IME.

Plaintiff seems to argue [1] that her claims should not be dismissed because State Farm breached the contract by (a) subjecting her to the peer review process, and (b) denying to pay Plaintiff benefits pending the results of an IME. First, Plaintiff argues that the peer review process does not apply to her case because she entered the insurance contract prior to the enactment of the insurance law amendments instituting the peer review system. Second, Plaintiff cites a July 23, 1993 letter from insurance Commissioner Linda Takayama to automobile insurers doing business in Hawaii ("Takayama letter"), and an administrative hearing decision in *Calatrava v. AIG Hawaii,* MVI–93–76 and MVI–93–77 for the proposition that it is unlawful for an insurer to withhold benefits based on an insured's refusal to attend an IME. Plaintiff's contentions are without merit.

Hawaii Rules of Civil Procedure, Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief ..." This requirement is to provide defendant with fair notice that a claim has been lodged, and the grounds upon which that claim rests. *Au,* 63 Haw. at 221, 626 P.2d 173 (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957) and *Hall v. Kim,* 53 Haw. 215, 491 P.2d 541 (1971)).

▇▇▇ As a general rule, pleadings should be construed liberally and not technically. *Island Holidays, Inc. v. Fitzgerald,* 58 Haw. 552, 574 P.2d 884 (1978). In breach of contract actions, however, the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient. In a recent insurance case before this court, it was held that the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law. *See* December 12, 1995 Order Granting Defendant's Motion to Dismiss ("Hataishi Order"), *Hataishi,* Civ.

---

1. Plaintiff's memorandum in opposition did not directly address State Farm's contentions; Plaintiff instead incorporated the arguments in her Motion for Partial Summary Judgment as her opposition to State Farm's arguments.

No. 95–00732 HG, at 5 (complaint dismissed for failure to charge specific breach of contractual agreement); *Au,* 63 Haw. at 221, 626 P.2d 173.

In *Hataishi,* the insured argued that the insurance company breached the contract by failing to perform in a timely fashion. Hataishi Order, at 5. The court held that the insured's failure to point to a specific contractual provision requiring timely performance was fatal; the court thereby dismissed the insured's contract actions. *Id.*

The *Hataishi* court relied on *Au,* a Hawaii Supreme Court decision which upheld summary judgment on a breach of contract claim where the complaint failed to "specify what provisions of the agreement of sale were breached." *Au,* 63 Haw. at 221, 626 P.2d 173. The court held that this defect was fatal because the insured failed to give "fair notice of what the claim [was] or the ground upon which it rest[ed]."

■ Here, it seems that Plaintiff's contractual actions arise from State Farm's utilization of the peer review organization ("PRO") process created by Haw.Rev.Stat. § 431:10C–308.6. In Counts IV and V of her Amended Complaint, Plaintiff levies general allegations of a contractual breach. She does

not, and the court finds that she cannot, point to any contractual provision which requires State Farm to pay all benefits submitted or a provision which prohibits PRO reviews. In fact, Plaintiff does not invoke the contractual agreement at all in her Amended Complaint. Thus under the holdings in *Au* and in *Hataishi,* the court dismisses Counts IV and V for failure to state a breach of contract claim with adequate specificity.[2]

■ Furthermore, the court disagrees with Plaintiff's contention in the Amended Complaint that State Farm's denial of benefits for the treatment plans are tantamount to a breach. The contract indicates that State Farm will pay "reasonable expenses incurred for necessary" medical care and rehabilitation.[3] State Farm points to the conclusions of the Peer Review Report to show that, the chiropractic treatment plans are not necessary. The Peer Review Report stated that Plaintiff "has achieved maximum chiropractic benefit in relation to the subject accident. No further care is appropriate in this case."[4] Nomura Affidavit, attached to State Farm's Motion, Exh. J, at 1. Under the policy, State Farm is not liable for non-essential chiropractic treatment plans. Plaintiff does not offer any evidence to rebut

2. Where a contract is breached in a wanton and reckless manner as a result in a tortious injury, the aggrieved person is entitled to recover in tort." *Dold v. Outrigger Hotel,* 54 Haw. 18, 22, 501 P.2d 368 (1972). In order to prevail on a tortious breach of contract claim, Plaintiff must establish: (1) there was a breach of contract; and (2) that it was a wanton and reckless breach which resulted in tortious injury.

As determined above, Plaintiff has not established that State Farm breached any contractual obligation. Without a breach, there cannot be a tortious breach. Accordingly, the court finds that the tortious breach of contract claim must also be dismissed.

3. In relevant part for no-fault coverage, the State Farm insurance contract states:

We will pay the following benefits in accordance with the *No–Fault Act* for *bodily injury* to an *insured,* caused by accident resulting from the ownership, operation, maintenance or use of a *motor vehicle* as a vehicle:

1. *Medical Expenses.* These are reasonable expenses incurred for necessary:
a. medical, hospital, surgical, X-ray, optometric, dental, prosthetic, ambulance and professional nursing services, products and accommodations ...

2. *Rehabilitation Expenses.* These are reasonable expenses incurred for necessary psychiatric services and physical and occupational therapy.
*See* State Farm's Opposition to Plaintiff's Motion, Exh. N, at 8–9.

4. The Peer Review panel stated:

Based on the extensive records reviewed, [Plaintiff's] musculoskeletal injuries were confined to soft-tissue sprains/strains. No further chiropractic care is indicated in relation to the 12–16–92 accident ... The suggested duration of care for soft tissue systems is a maximum of sixteen weeks ... We believe that passive treatment over one year post-accident is of no curative value, and, at most, offer temporary palliation. Unfortunately in this case, additional care would tend to reinforce a dependence on the health care providers that already exists and bolster the patient's feeling of impairment. At this point, the patient should have been provided an active exercise program. This would provide the greatest likelihood of permanent relief.
Nomura Affidavit, attached to State Farm's Motion, Exh. J, at 2–3.

State Farm's contentions that the chiropractic treatment plans are unnecessary. Her threadbare allegations do not dispute State Farm's conclusions; they simply fault State Farm for not paying requested benefits. Without proof that those treatment plans were reasonable and necessary expenses under the Policy, Plaintiff's breach of contract claim must fail.

■ Similarly, the court rejects Plaintiff's IME argument which is grounded in the Takayama letter and *Calatrava.* Contrary to Plaintiff's interpretation, the Takayama letter and *Calatrava* do not stand for the proposition that it is unlawful for State Farm to withhold benefits based on Plaintiff's refusal to attend an IME. Rather they establish that an insurer must have a valid existing reason for denying coverage and cannot withhold or deny the payment of benefits based on the *outcome* of an IME. *See* Calatrava, at 15; Takayama letter, at ¶ 4.

Here the Record does not indicate that State Farm denied coverage based on the outcome of an IME. Instead, State Farm appears to have denied coverage, as it is entitled to do pursuant to the terms of the contract and Hawaii no-fault law, upon Plaintiff's failure to attend a reasonably requested IME.

■ In Hawaii, it is well-established that a party cannot recover for a breach of contract where she fails to comply with the contract herself. *PR Pension Fund v. Nakada,* 8 Haw.App. 480, 491, 809 P.2d 1139 (1991) (quoting 17A Am.Jur.2d Contracts § 617, at 625 (1991)). Other courts have uniformly found that an insured's refusal to submit to a reasonably requested IME is a breach of a condition precedent to coverage that relieves an insurer of any duty to make further payments under the Policy. *See De Ferrari v. Government Employees Ins.,* 613 So.2d 101 (Fla.Dist.Ct.App.1993); *Jensen v. American Family Mut. Ins. Co.,* 683 P.2d 1212 (Colo.App.1984) (insured could not recover for chiropractic treatment rendered after he refused an IME where insurer had a contractual right to request an IME); *Allstate Ins. Co. v. Graham,* 541 So.2d 160 (Fla.Dist.Ct.App.1989) (insurer released from liability when insured refused to submit to a physical examination by an independent phy-

sician as provided for in the insurance policy).

In *De Ferrari,* the insured, like Plaintiff here, filed a claim with her insurer after she had been injured in a car accident. Her insurer scheduled two IMEs—one with an internist and the other with an orthopedic surgeon. The insured only attended the first exam and refused to submit to an IME by the orthopedic surgeon. The insurer denied coverage based upon the insured's failure to attend the requested examination. The Florida Court of Appeals affirmed summary judgment in favor of the insurer, holding that "[s]ubmission to the reasonably requested IME was a condition precedent to coverage. Considering the insured's unreasonable refusal to submit to the examination, the trial court properly concluded that [the insured] could not maintain her action." *Id.* at 103 (citations omitted).

Here, Section 4(b) of the Policy provides as one of the insured's duties, "the Person making claim also shall ... be examined by physicians chosen and paid by us as often as we reasonably may require." State Farm's Opposition to Plaintiff's Motion, Exh. N, at 4. Section 5 of the Policy also provides that "[t]he insured shall cooperate with us and, when asked, assist us in ... securing and giving evidence." *Id.* at 5. In further support, Hawaii Administrative Rule 16–23–4 indicates, "A no-fault policy may provide that an eligible injured person shall submit to medical or related examination by a physician selected by or acceptable to, the insurer when, and as often as, the insurer may reasonably require."

■ Here the evidence indicates that as part of the investigation to determine whether Plaintiff's continued chiropractic treatment was "appropriate, reasonable, necessary, and causally related," State Farm requested Plaintiff to attend an IME from one of three doctors. *See* Nomura Affidavit, attached to State Farm's Motion, Exh. A. The request for Plaintiff to submit to an IME appears to be a direct response to a chiropractic treatment plan submitted by Whest almost a full year after the accident. *Id.* Plaintiff had already received extensive chiropractic and acupuncture treatment for

the injuries she allegedly sustained as a result of the December 16, 1992 accident. The record shows a substantial gap between the first chiropractic treatment and the treatment plan submitted by Whest in December 1993. Under these facts, the court finds State Farm's request for Plaintiff to submit to an IME was reasonable. And under the terms of the contract, Plaintiff is obligated to attend a reasonably requested IME. Consequently, Plaintiff's failure to comply with this condition precedent precludes her from maintaining her action here. *PR Pension,* 8 Haw.App. at 491, 809 P.2d 1139.

For the record, the court rejects Plaintiff's claim that she was excused from the IME because of State Farm's failure to provide a choice of physicians who practice in Hawaii. Plaintiff's primary objection to the choice of physicians appears to be cost. Plaintiff's objections to the costs are irrelevant here because (a) the statutes expressly allow for out-of-state providers to conduct IMEs, where the charges are reasonable and (b) here the physician selected to conduct the IME *was* a Hawaii provider who complied with the fee schedules. *See* Haw.Rev.Stat. 431:10C–308.5. Furthermore, the court finds that State Farm selection of physicians for the IME satisfied the statutory requirements in Haw.Administrative Rule 16–23–4 and in Haw.Rev.Stat. 431:10C–308.5.

Thus, for the record, the court also finds grounds for summary judgment as to Counts IV and V of Plaintiff's Amended Complaint.

### B. *Equitable Estoppel*

■ Count III of the Amended Complaint alleges equitable estoppel. State Farm contends that this claim must fail because Plaintiff's equitable estoppel claim does not meet the elements necessary for recovery under this theory.

■ Equitable estoppel requires proof that one person willfully caused another to erroneously believe a certain state of things, and that person reasonably relied on this erroneous belief to his or her detriment. *Maria v. Freitas,* 73 Haw. 266, 273, 832 P.2d 259 (1992) (citing *Aehegma v. Aehegma,* 8 Haw.App. 215, 223, 797 P.2d 74 (1990)). A party invoking equitable estoppel must show

detrimental reliance and that such reliance was reasonable. *Strouss v. Simmons,* 66 Haw. 32, 43, 657 P.2d 1004 (1982) (citing *Doherty v. Hartford Insur. Group,* 58 Haw. 570, 574 P.2d 132 (1978)).

In the Amended Complaint, Plaintiff sets forth her estoppel claim as follows:

58. DEFENDANT, knew or should have known, that Plaintiff was relaying [sic] on her no-fault policy to pay medical benefits for treatment of injuries which were sustained in the automobile accident of December 16, 1992.

59. DEFENDANT, did not advise Plaintiff that it was having her treatment questioned by strangers to the insurance contract for the purpose of determining if benefits would be paid by DEFENDANT on behalf of Plaintiff.

60. DEFENDANT, State Farm, is equitably estopped from retroactively denying no-fault benefits.

Amended Complaint, at ¶¶ 58–60.

The Amended Complaint does not allege the elements necessary for equitable estoppel. Here Plaintiff fails to show that State Farm willfully caused her to believe that they would pay *all* medical expenses, regardless of necessity or causal-relation to the underlying accident. Plaintiff does not submit any evidence nor does she point to any language in the contract that makes such a broad promise; thus the court finds that Plaintiff's reliance is misplaced. Additionally, the court finds that Plaintiff was not injured by State Farm's refusal to pay, because under the no-fault laws, Plaintiff is not liable for paying the care providers, *see* Haw. Rev.Stat. § 431:10C–308.6(j); thus, even if reliance is shown, the court finds that, as a matter of law, Plaintiff cannot establish *detrimental* reliance. Accordingly, the court DISMISSES the equitable estoppel claim alleged in Count III of the Amended Complaint.

### C. *Fraud*

■ State Farm also contends that the Amended Complaint fails to meet the heightened pleading requirement for fraud under

Rule 9(b) of the Federal Rules of Civil Procedure.

Fed.R.Civ.P. 9(b) provides in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Ninth Circuit has interpreted this as a heightened pleading requirement, requiring the pleader to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981). Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Additionally, "[t]he requirements of Rule 9(b) are designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.*

Here, the court finds that Plaintiff has failed to plead fraud with the requisite particularity, for her Amended Complaint does not enumerate the specific time, place and identities of the parties that communicated the allegedly false statements.[5] The court finds Plaintiff's complete failure to comply with Rule 9(b) sufficient ground to dismiss Count VII of the Amended Complaint.

As a sidenote, the court finds that the estoppel, fraud, and tortious breach of contract actions could also have been dismissed upon summary judgment because Plaintiff failed to meet its burden of production. State Farm moved to dismiss Plaintiff's estoppel, fraud, and tortious breach claims pursuant to Fed.R.Civ.P. 12(b)(6) and 56. According to Rule 56, once the movant has met its burden of demonstrating that there is no genuine issue of material fact, the opposing party has an affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). Here, Plaintiff's opposition papers do not dispute the facts State Farm presented on behalf of its motion for summary judgment as to the estoppel, fraud, and tortious breach claims. The court finds Plaintiff's failure to bring forth specific facts itself justifies summary judgment in favor of State Farm. Fed. R.Civ.P. 56(e); *see T.W. Elec.*, 809 F.2d at 630; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### D. *Constitutionality of Acts 123 and 124*

In Count I, Plaintiff requests declaratory relief in the form of an order declaring that (a) Acts 123 and 124 do not apply to her claims stemming from the December 1992 accident; (b) the PRO system established by Acts 123 and 124 are invalid and unconstitutional; (c) State Farm breached the contract; and (d) Plaintiff is not required to attend an IME.

Intervenor–Defendant State of Hawaii moves this court for an order either (a) dismissing Plaintiff's constitutional claims or (b) abstaining from determining the merits. Hawaii argues that the peer review process created by the 1992 amendments to the insurance code did not change any substantive rights; the peer review process established by Acts 123 and 124 only affected the procedure for determining "appropriate and reasonable" expenses to treatment. Hawaii notes that Plaintiff still has the remedies previously available to her. Additionally, Hawaii maintains that, under the *Pullman* abstention doctrine, this court should abstain on ruling as to the constitutionality of the

---

**5.** The Amended Complaint states in relevant part:

25. On numerous occasions after December 16, 1992 DEFENDANT State Farm through its employees, agents, or representatives assured PLAINTIFF that her claim would be promptly investigated and equitably adjusted.

26. On numerous occasions prior to December 16, 1992 DEFENDANT State Farm through its employees, agents, or representatives assured Plaintiff that her claim would be promptly investigated and equitably adjusted.

27. PLAINTIFF, specifically relied on the promises, assurances and representations of DEFENDANT, by and through its employees, agents, or representatives in entering into the contract of insurance identified by policy number S15 2429–F15–51–001 issued by DEFENDANT, and under other possible policy numbers, presently not known to PLAINTIFF.

Amended Complaint, at ¶¶ 25–27.

peer review process because (a) it is an important issue of state law that the state courts should decide and (b) the constitutional question is collateral to Plaintiff's bad-faith claims against State Farm.

### 1. Abstention

■ The *Pullman* abstention doctrine is a "narrow exception to the district court's duty to decide cases properly before it." *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "Pullman allows postponement of the exercise of federal jurisdiction when 'a federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* (quoting *C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983), in turn quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

■ Three factors must be present before abstention is allowed under *Pullman:* (1) the complaint must involve a "sensitive area of social policy" that is best left to the states to address; (2) "a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court"; and (3) "the proper resolution of the potentially determinative state law issue is uncertain." *Kollsman*, 737 F.2d at 833.

■ The first two factors are unquestionably present in this case. First, regulation of no-fault insurance concerns sensitive issues of social policy. The interpretation of the insurance code, especially as it relates to no-fault automobile insurance, is an area of especial local concern into which federal intrusion is highly undesirable. *Cf. Fireman's Fund Ins. Co. v. Garamendi*, 790 F.Supp. 938, 959 (N.D.Cal.1992) (insurance rates on automobiles touches sensitive area of California state policy because it affects millions of California citizens).

Second, determining the validity of the PRO process and the applicability of those procedural devices to accident injuries and treatments depending on the time of treatment could obviate the need for a federal constitutional ruling. If a state court were to determine that the local statute is unconstitutional or should not apply to Plaintiff, a federal court would not have to decide Plaintiff's due process claim.

The abstention question turns on the third factor: if the resolution of the state law question is unclear, the district court must abstain. To date, no state court action is known to have been filed in which Acts 123, 124 or the implementing rules are alleged to be unconstitutional, but due process arguments based on the same have been unsuccessfully advanced in several cases. *See Souza, et. al. v. Metcalf, et al.*, Second Circuit Civil No. 93–0053(3), *Richard v. Reifurth, et al.*, First Circuit Civil No. 94–1351, Supreme Court No. 18257, *Calibuso v. AIG Hawaii Insur. Co., Inc.*, Second Circuit Civil No. 94–0583(2); *Lovett v. AIG Hawaii Insur. Co., Inc.*, First Circuit Civil No. 94–2310–06. The state circuit courts are unanimous in their dismissal of challenges to the promulgations and implementation of Acts 123, 124 and the implementing rules.

Furthermore, the court finds that the insurance code is clear as to the Code's applicability to treatment plans submitted in November 1993, April and July 1994. The Hawaii Administrative Rules state in part:

> *Fee schedules.* Subject to the time limitations set forth in section 431:10C–315, HRS, this subchapter shall apply to treatment occurring after May 31, 1993, regardless of when the accident causing the injury occurred....

Haw.Admin.R. § 16–23–93 (1993). The court finds no ambiguity in this administrative rule that would benefit from state court interpretation. The court concludes that there is no uncertainty as to the insurance code provisions implicated in this case; Haw.Admin.R. § 16–23–93 unequivocally establishes that the insurance code provisions regarding peer review apply to the chiropractic treatment plans at issue in this case. The only issue is whether those statutes are constitutional under the state constitution. The Supreme Court has held that abstention is not appropriate and state law is not to be deemed uncertain merely because the state has not yet considered the law's constitutionality under the state constitution. *See Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971). The court

concludes that there is no question of unclear state law pending before this court, and thereby declines the abstention option. Instead, in the interest of justice and judicial economy, the court will rule on the merits of this matter.

### 2. Unconstitutionality Claim

■ Plaintiff seems to argue, via incorporation of the arguments from her Motion for Partial Summary Judgment, that the peer review process violates the Hawaii State Constitution, in that it deprives Plaintiff of the value of her insurance policy without adequate opportunity to be heard on the merits of her claim. Plaintiff's arguments are two-fold: Plaintiff asserts that the PRO process established by Haw.Rev.Stat. § 431:10C–308.6 and Haw.Admin.R., Chapter 16, Subchapters 17 and 18 is constitutionally infirm, and that since Plaintiff's accident allegedly occurred before the effective date of § 308.6, the procedures established by Haw. Rev.Stat. § 431:10C–308.6 cannot be utilized in the determination of her disputed claims for payment under her no-fault insurance coverage with State Farm.

§ 431:10C–308.6 states in relevant part:

Charges and treatment in excess of fee schedules or treatment guidelines shall be governed by this section. The fee sched-

ules or treatments may be exceeded if a provider of treatment or rehabilitative services finds that the nature of the injuries and the process of recovery require a treatment plan resulting in fee schedules or treatment guidelines to be exceeded. If an insurer desires to challenge treatment and rehabilitative services in excess of the fee schedules or treatment guidelines, the insurer may do so by filing, within five working days of a request made pursuant to subsection (d), a challenge with the commissioner for submission to a peer review organization as provided in this section.

Haw.Rev.Stat. § 431:10C–308.6 (1994).

In reading this statute, the court finds that this statute does not purport to change Plaintiff's right to "appropriate and reasonable expenses necessarily incurred" for services and treatment under a no-fault claim. Both prior to and after January 1, 1993, Plaintiff, like any no-fault claimant, was entitled to "all appropriate and reasonable expenses necessarily incurred" for medical problems and rehabilitation resulting from an accident. The amendments to no-fault insurance coverage did not change the benefits available, rather § 431:10C–308.6 added the PRO process to help determine what are "appropriate and reasonable expenses" under the no-fault law.[6] Plaintiff was not deprived of due pro-

---

**6.** Hawaii persuasively explained that Plaintiff's substantive rights did not change by the addition of the peer review process. Hawaii noted that prior to January 1, 1993, the process was as follows: a claimant injured in an accident involving no-fault coverage received treatment from a provider. The provider could either bill the claimant or the insurer. The insurer had thirty days in which to pay or deny the claim, or request additional information. *See* Haw.Rev. Stat. § 431:10C–304(2) and (3) (1987 Special Pamphlet). If the insurer denied the claim, the claimant could proceed to arbitration, or to an administrative hearing, with judicial review available to the claimant and insurer thereafter. *See* Haw.Rev.Stat. §§ 431:10C–212 and 431:10C–213 (1987 Special Pamphlet). The no-fault benefits issue was whether the fees charged were for "appropriate and reasonable expenses necessarily incurred." *See* Haw.Rev.Stat. § 431:10C–103(10)(A) (1987 Special Pamphlet).

And in comparison, after January 1, 1993 if a claimant was injured she is entitled to "appropriate and reasonable expenses necessarily incurred." *Id.* The only difference is that as a result of Act 123, which enacted Haw.Rev.Stat. § 431:10C–308.5, the Legislature has deemed to be appropriate and reasonable those treatments

provided in accordance with the workers' compensation fee and treatment frequency schedules, or other guidelines set by duly adopted administrative rules. Thus, if the provider's treatment is within the fee and frequency schedules, the insurer must pay the scheduled fee. As to fees or frequency of treatment not in the schedules, or exceeding scheduled amounts, if the insurer wishes to challenge the claim, the insurer may invoke the peer review process established by Haw.Rev.Stat. § 431:10C–308.6 and implemented by administrative rules, Haw.Admin.R. chapter 16–23, subchapters 17 and 18.

There are important exceptions to application of the workers' compensation schedules. First, the schedules do not apply to emergency services within 72 hours of the motor vehicle accident resulting in injury. Haw.Rev.Stat. § 431:10C–308.5(b) (1993). Thus, any dispute regarding the appropriateness or reasonableness of such services will be resolved as it was prior to enactment of Acts 123 and 124.

Second, fees and treatment frequency which exceed the schedules and which are successfully challenged by the insurer remain subject to arbitration, administrative hearing and judicial review, as that process existed before Acts 123 and

cess in this case because the court does not find any evidence that the 1992 no-fault amendments or administrative rules reduced the right of a no-fault claimant to benefits for "appropriate and reasonable expenses necessarily incurred" up to the limit of no-fault coverage.

Furthermore, the court finds no justification for Plaintiff's argument that the changes to the insurance code were implemented without proper authorization. The insurance code clearly grants the Insurance Commissioner authority to "[m]ake, subject to Chapter 91, reasonable rules and regulations for effectuating any provision of this code ..." Haw.Rev.Stat. § 431:2–201(c)(1) (1994). This authority encompasses the promulgation of administrative rules relating to fees or frequency of treatment in no-fault cases. By logical extrapolation, the court finds that the commissioner's rulemaking authority also enables him to adopt a procedural mechanism, namely the peer review process codified in Haw.Rev.Stat. § 431:10C–308.6, through which the guidelines for service provider fees and frequency of treatment may be exceeded. The court finds that neither the guidelines, nor the procedures instituted to exceed the guidelines, abridge Plaintiff's rights to reasonable and appropriate medical care under her no-fault insurance policy.

As the evidence unequivocally shows, the 1992 amendments are legitimate and did not substantively affect Plaintiff's rights under the Policy. Also, the court concludes that the PRO process applies to Plaintiff's case because the treatment plans were submitted after May 1, 1993. Accordingly, the court GRANTS summary judgment[7] in favor of Hawaii and State Farm, and hereby DISMISSES Plaintiff's state constitutional claims in Count I of the Amended Complaint.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Having dismissed the outstanding claims against State Farm in Plaintiff's Amended Complaint, the court finds no need to adjudicate Plaintiff's Motion for Partial Summary Judgment. The court notes that most of Plaintiff's arguments were considered and rejected in opposition to Defendants' motions and thus it would be duplicative and a waste of judicial resources to restate the same information here. For these reasons, the court DENIES Plaintiff's Motion for Partial Summary Judgment.

### CONCLUSION

For the above reasons, the court GRANTS State Farm's Motion to DISMISS WITH

124, except that Act 123 imposes a "peer review" process prior to resort to arbitration or administrative hearing. In effect, an organization comprised of the provider's professional peers reviews the insurer's challenge to determine if the fees and treatment are "appropriate and reasonable." If there is still disagreement, Plaintiff still has access to arbitration, administrative hearings and judicial review. Also, the provider may not bill the claimant directly, nor may the provider bill for or collect from the claimant any amount which is ultimately disapproved for no-fault benefits. Furthermore, if the insurer does not challenge the provider's charges in timely fashion, the charges are deemed approved. If the insurer elects to challenge, it bears the burden of making that challenge and must pay a filing fee of $200.00. Haw.Admin.R. §§ 16–23–118 and 16–23–90.

The court finds however that in all of these provisions, the pre-existing right of claimants to "all appropriate and reasonable expenses for treatment necessarily incurred" is preserved. The administrative rules affect only the procedure for determination of "appropriate and reasonable expenses" to treatment received after the effective date. No claimant's "rights, duties or

actions that are based upon events or acts which have occurred prior to the effective date [of Acts 123 and 124]" are affected by Act 123, Act 124, or the challenged administrative rules implementing those Acts.

Careful reading of all of Haw.Admin.R. chapter 16–23, subchapter 17, reveals that every section of that subchapter relates to permissible fees charged by providers of services. For treatment rendered after January 1, 1993, providers' charges for services are required by statute to be submitted directly to the insurer, not to the claimant. Furthermore, the provider is barred from billing or otherwise attempting to collect from the insured. Haw.Rev.Stat. § 431:10C–308.5(e) (1995). The court notes, however, that the standard for approving or denying Plaintiff's claims for treatment is the same now as before the enactment of the amendments.

7. As "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990).

PREJUDICE, GRANTS Hawaii's Motion to Dismiss Constitutional Claims, and DENIES Plaintiff's Motion for Partial Summary Judgment. The case is hereby closed.

IT IS SO ORDERED.