K. M. YOUNG & ASSOCIATES, INC., a Hawaii corporation, for itself and as General Partner for Hualalai Holding Co., a registered limited partnership, Plaintiff, *v.* MANFRED CIESLIK and THOMAS COSSEY, Defendants, Third-Party Plaintiffs, *v.* K. M. YOUNG aka KENNY YOUNG, LANIHAU CORP., and McCLEAN RANCH PROPERTIES, INC., Third-Party Defendants, and McCLEAN RANCH PROPERTIES, INC., Counterclaimant, Cross-claimant, *v.* K. M. YOUNG & ASSOCIATES, INC., a Hawaii corporation, for itself and as General Partner for Hualalai Holding Co., a registered limited partnership, Cross-claim Defendant, and MANFRED CIESLIK and THOMAS COSSEY, Counterclaim Defendants

(CIVIL NO. 5087)

K. M. YOUNG & ASSOCIATES, INC., a Hawaii corporation, for itself and as General Partner for HUALALAI HOLDING CO., a registered limited partnership, Plaintiff, *v.* McCLEAN RANCH PROPERTIES, INC., a California corporation, Defendants

(CIVIL NO. 5148)

RONALD EUGENE LANET, EVERETT FRANKLIN SHREWSBURY, PHERNE CRAIG SHREWSBURY and JOHN DICKMEYER, Plaintiffs in Intervention-Appellees, *v.* McCLEAN RANCH PROPERTIES, INC., a California corporation, K. M. YOUNG & ASSOCIATES, INC., a Hawaii corporation, Individually and as General Partner of Hualalai Holding Company, a limited partnership, ERNEST A. WILFONG, GAY D. WILFONG and TAMEKICHI ISHIMARU, Defendants in Intervention, and MANFRED CIESLIK, Defendant in Intervention-Appellant

NO. 8505

DECEMBER 29, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant in intervention Manfred Cieslik (Cieslik) appeals from the summary judgment of the court below in favor of plaintiffs in intervention Ronald Eugene Lanet (Lanet), Everett Franklin Shrewsbury, Pherne Craig Shrewsbury (Shrewsbury) and John Dickmeyer (Dickmeyer) (hereinafter collectively referred to as Intervenors). Cieslik raises the following issues on appeal:

(1) Whether the trial court erred in awarding summary judgment; and

(2) Whether the trial court erred in denying Cieslik's motion for reconsideration.

We answer no to both questions. However, for reasons set forth below we remand this matter to the lower court for redetermination of the relief to be granted to Intervenors.

Intervenors intervened as plaintiffs in this consolidation of Civil Nos. 5087 and 5148[1] by complaint filed on September 19, 1980.[2] Count I of the complaint alleged that Intervenors owned a 55.017% undivided interest in a parcel of land in Honokohau, Kona, identified as Tax Map Key No. 7-4-8-26, parcel 7, which is the subject of the original actions. Lanet and the two Shrewsburys alleged ownership under a deed from Cieslik of 90% of his 61.13% undivided interest in the property. Dickmeyer alleged ownership under a separate warranty deed.[3] Count II alleged that Intervenors purchased the undivided interest through a written agreement with Cieslik for a purchase price of $1,840,000.00, payable as follows: four promissory notes,

---

[1] Consolidation was ordered on July 30, 1979.

[2] The motion to intervene was filed on September 15, and a hearing was held on September 19, 1980. The motion was orally granted on that date but the order permitting intervention was not filed until October 7, 1980.

[3] Dickmeyer allegedly owned 20% of Lanet's and Shrewsburys' 90% interest. A copy of Dickmeyer's deed is attached to Intervenor's motion for partial summary judgment as to Count I. Dickmeyer's grantors are Donald E. Scheidt and Meredith L. Scheidt, husband and wife, and Sonnia J. Correa, an unmarried man. Dickmeyer's grantors acquired a 20% interest from Intervenors by deed dated July 23, 1979.

which were equal in amount, executed by one Roger D. Miles and totalling $135,583.16 (hereinafter Miles notes), secured by a second deed of trust on land located in Sunnyvale, California; $264,416.84 cash; Intervenors' promissory note for $100,000 (hereinafter $100,000 note), payable within sixty days of the close of escrow; a second promissory note, also executed by Intervenors, for $1,340,000 secured by a mortgage on the subject property (hereinafter note and mortgage). The note and mortgage would be paid according to the terms set forth in Exhibit "A" attached to the agreement. Exhibit "A" reads as follows:

The note will be payable with interest at nine percent (9%) per annum. Interest to begin to accrue twelve (12) months after closing. Principal and interest payments to begin after property has been subdivided and lots are sold or optioned. The note shall be payable by receipt of seventy-five percent (75%) of all proceeds from sale or option payments until debt and interest are satisfied. In any event, the principal and interest will be paid in full on or before three (3) years from closing. Said note will be secured with a mortgage on the real property. The mortgage will contain a release clause for approximately thirty-six (36) individual lots and a provision permitting subordination of the lien to a subsequent security for a note payable to a recognized lender. Provided the proceeds of a note to which 2nd Party subordinates shall be used only for financing improvements on the property, including a reasonable loan fee. Subordination and release agreements to be prepared by an attorney mutually satisfactory to both parties.

Count II also alleged that Intervenors anticipated and believed that Cieslik would "fail and/or refuse to repurchase the property pursuant to the Agreement."

The repurchase provision of the agreement reads as follows:

7. Second party does hereby agree to attempt to have said property re-zoned adequately to develop an industrial park and any and all subdivision necessary permits on or before July 1, 1980, and shall devote all efforts necessary to accomplish said re-zoning, second party shall re-purchase

said property for the sum of TWO MILLION SIXTY THOUSAND EIGHT HUNDRED DOLLARS payable by cancellation of the Note and Mortgage received by second party from first party, plus transfer of those Notes from Roger D. Miles, in the sum of ONE HUNDRED THIRTY-FIVE THOUSAND FIVE HUNDRED EIGHT [sic] THREE DOLLARS AND SIXTEEN CENTS plus the balance by cash, within sixty days after July 1, 1980. In the event second party fails and/or refuses to re-purchase said property within *six months* after due, second party shall have the right to sell property to obtain the balance of monies due plus twelve percent interest per annum on the said sum of TWO MILLION SIXTY THOUSAND EIGHT HUNDRED DOLLARS AND NO CENTS from the date of commencement of said SIX (6) months this Agreement until said sum is paid off. Second party shall be agreeable to cooperating in a IRC 1031 tax deferred exchange. [Emphasis in original.]

Intervenors prayed for (1) a partition or sale of the property; (2) damages, costs and fees; and (3) attorney's fees.

In his answer Cieslik denied the allegation that he would refuse to repurchase the property. Cieslik admitted the genuineness of the agreement and did not deny Intervenors' allegations of ownership, but indicated he intended "to rely on the defense that the documents speak for themselves."[4] Cieslik alleged that he owned 61.13% of the property, and prayed for partition or for sale of the property and distribution of the proceeds. Cieslik also counterclaimed against Intervenors for principal and interest due on the $100,000 note which was unpaid.[5]

---

[4] Under the terms of Rule 8(d), Hawaii Rules of Civil Procedure (HRCP) (1980), those allegations are admitted. Rule 8(d), HRCP, provides:

· Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

Cieslik also alleged he would rely on the defenses of "offset," "setoff," "lack or failure of consideration," and "material breach."

[5] Escrow closed on August 27, 1979. Intervenors acknowledge that the note was not paid when due on October 27, 1979.

After filing their answer to Cieslik's counterclaim and their own "counterclaim in reply," Intervenors moved for partial summary judgment as to Count I on November 13, 1980. The motion asked the court to (1) partition the property, allot Intervenors their portion, and set the rest apart for the other parties; or (2) sell the property, give Intervenors their share of the proceeds and set the remainder apart for the other parties; and (3) appoint a commissioner to report on the practicability of partition or to sell the property. On November 25, 1980, Cieslik filed a memorandum supporting a partition in kind rather than by sale, but did not file any documents opposing the motion.

On January 7, 1981, the court entered an order granting Intervenors' motion and appointing Katsuya Yamada commissioner to report forthwith on the practicability of partition or to sell the property if partition would be impractical.

On May 4, 1981, Intervenors filed a motion for summary judgment as to Count II of their complaint in which they asked the court: (1) to cancel the note and mortgage; (2) to direct Cieslik to assign to Intervenors the Miles notes and the deed of trust securing them; (3) for judgment against Cieslik for the balance due on his agreement to repurchase their undivided interest; and (4) to allow Intervenors to sell their interest, whether divided or undivided, to recover the balance due under the repurchase provision. The motion was based on attached affidavits and documents,[6] and "the papers, records and other pleadings" on file.

Intervenors' motion was granted and judgment was rendered on June 18, 1981,[7] as follows: (1) Cieslik was in default

---

[6] The attached documents are not "sworn to" as required by Rule 56(e), Hawaii Rules of Civil Procedure (HRCP). However, they are attached to Shrewsbury's affidavit, which is on personal knowledge, and are sworn to by her as "full and true." The requirement of the rule is satisfied. *Crutchfield v. Hart,* 2 Haw. App. 250, 630 P.2d 124 (1981).

[7] The order for final judgment entered the same day contained an express finding by the court that there was no just reason for delay and directed entry of final judgment. Therefore, we have appellate jurisdiction under Rule 54(b).

on his agreement to repurchase Intervenors' undivided interest; (2) the $100,000 note and the note and mortgage executed by Intervenors were cancelled; (3) Cieslik was required to assign and deliver to Intervenors the Miles notes and the deed of trust, and was enjoined from asserting any claims to the notes and deed or any payments made thereunder to Intervenors; (4) Cieslik was required to pay a money judgment to Intervenors of $557,507.08 with daily interest of $272.56; (5) Intervenors were authorized to sell their undivided interest, or divided interest in the event of partition, to satisfy the judgment; and (6) Intervenors were awarded their attorney's fees and costs. The $557,507.08 judgment was determined by subtracting the principal and interest owed to Cieslik on the various notes executed in his favor from the repurchase price of $2,060,800.00 plus interest.[8] An amended judgment was entered on July 14, 1981.[9]

On July 24, 1981, Cieslik filed a motion to reconsider or to amend the judgment, citing Rule 59, Hawaii Rules of Civil Procedure (HRCP). The motion was denied by order entered on September 4, 1981. Notice of appeal was filed on September 30, 1981.

I.

A motion for summary judgment is properly granted under Rule 56(c), HRCP (1980, as amended), if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979). That standard is

---

[8] The judgment amount credits Cieslik with $115,480.00 principal and interest due him on the promissory note on which his counterclaim was based.

[9] The amended judgment provided for daily interest of $272.56 from May 15, 1981, to June 18, 1981, and "thereafter at the rate of interest as provided by HRS Section 478-2, as amended." The $272.56 represents net interest due Intervenors under the agreement after deducting interest due Cieslik on the $100,000 note (*see* note 8), up to the entry of judgment, June 18, 1981. Thereafter, HRS § 478-2, established 10% as the interest rate on judgments, effective April 16, 1981.

applicable in both the trial and the reviewing court. In deciding the motion the evidence must be viewed in the light most favorable to the non-moving party. *Id.; Windward Partners v. Lopes,* 3 Haw. App. 30, 640 P.2d 872 (1982). *See Kawaihae v. Hawaiian Insurance Companies,* 1 Haw. App. 355, 619 P.2d 1086 (1980). The non-moving party in a properly supported motion for summary judgment must respond by affidavit or otherwise setting forth specific facts showing a genuine issue of material fact and may not rely on allegations of the pleadings. *Costa v. Able Distributors, Inc.,* 3 Haw. App. 486, 653 P.2d 101 (1983).

On May 13, 1981, Cieslik filed a memorandum in opposition to the motion, without affidavits or documents, contending that his answer raised issues of law and fact, and pointing out that he had asserted a counterclaim for $100,000. He also urged for the first time that the repurchase price was usurious. Cieslik contended that, since there were issues of fact regarding the usurious nature of the contract and regarding the amount due on the $100,000 note, summary judgment could not be granted. In a supplement to their motion for summary judgment filed on May 13, 1981, Intervenors conceded that principal and interest due on the note to Cieslik amounted to $115,480.00, as of May 14, 1981, the hearing date for the motion for summary judgment, and should be credited against any judgment against him for the balance due on the repurchase agreement. The issue of the promissory note was thus resolved and eliminated.

On May 21, 1981,[10] Cieslik filed an affidavit stating that the intent and purpose of the agreement between the parties was to "structure a loan of money to affiant secured by a 'mortgage' on the subject property; the agreement was drafted in such a manner as to effectuate a loan transaction; and Intervenors were aware that the agreement effectuated a loan transaction."

---

[10] Although the hearing was held on May 14, 1981, Cieslik was allowed until close of business on May 21, 1981, to file a memorandum. The memorandum that was filed consisted of Cieslik's affidavit.

Cieslik never properly opposed Intervenors' motion so as to show the existence of a genuine issue of material fact. His memorandum filed on May 13, 1981, was not a proper vehicle for raising issues of fact and simply relied on his pleadings. Moreover, his allegation of the usurious nature of the contract was nothing more than that, an allegation without supporting facts. *Cf. Freitas v. City and County of Honolulu,* 58 Haw. 587, 574 P.2d 529 (1978); *Costa v. Able Distributors, Inc., supra.* Although Cieslik's statement in his May 21, 1981 affidavit that "[t]he entire intent and purpose" of the agreement "was to structure a loan of money" to him could arguably have raised an issue of fact, *see Silver v. George,* 64 Haw. 503, 644 P.2d 955 (1982), it was ineffective in bringing the issue of usury before the court.

The defense of usury is an affirmative defense, the essential facts of which must be averred. 45 Am. Jur. 2d *Interest and Usury* § 270 (1969); Rule 8(c), HRCP. Cieslik's answer did not raise the affirmative defense and the affidavit failed to set forth any essential facts to show the presence of elements of a usurious agreement as set forth in *Dang v. F and S Land Development Corp.,* 62 Haw. 583, 618 P.2d 276 (1980). Cieslik's affidavit was merely an assertion of conclusions. *See Brown v. Bishop Trust Co.,* 44 Haw. 385, 355 P.2d 179, *reh'g denied,* 44 Haw. 687, 361 P.2d 1043 (1961).

Thus, when the court ruled on Intervenors' motion the only facts before it were those presented in the affidavits and documents attached to the motion and the pleadings and papers in the record. Those facts show an agreement under which: (1) Intervenors purchased the Kona property through an exchange of property owned by them in Orem, Utah, plus additional consideration; (2) Cieslik promised to use his best efforts to rezone the subject property by July 1, 1980; (3) Cieslik agreed to repurchase the property within 60 days after the July 1, 1980, deadline upon his failure to obtain rezoning; and (4) the parties agreed to the repurchase terms. The facts also show that the property was not rezoned and Cieslik had not repurchased the property.

On appeal, both parties argue that the agreement is unambiguous. Cieslik argues that he was absolutely required by paragraph 7 quoted above to repurchase the undivided inter-

est, while Intervenors argue that the repurchase was conditioned only upon his failure to obtain rezoning. We agree with Intervenors.

While the language of paragraph 7 is arguably ambiguous, the contract must be interpreted as a whole and its meaning is governed by the entire contract and not from any particular word, phrase, or clause. *Hung Wo Ching v. Hawaiian Restaurants, Ltd.,* 50 Haw. 563, 445 P.2d 370 (1968). The provisions of Exhibit "A" regarding the terms of the note and mortgage clearly indicate that the parties contemplated a rezoning and subdivision of the property in question. The sale of the subdivided lots was to supply the funds for payment of the note. The provision for partial release and subordination of the lien of the mortgage to subsequent mortgages was for the purpose of facilitating those sales. A reading of the contract as an entity indicates that the repurchase requirement was contingent upon Cieslik's failure to perform. Cieslik's argument that the unambiguous nature of the agreement made the principal of the "loan" absolutely repayable, one of the elements set forth in *Dang, supra,* is without merit.

Clearly, the facts indicate that Intervenors should prevail as a matter of law, and the court was correct in awarding summary judgment. Cieslik had presented no facts in opposition to raise the requisite genuine issue.

II.

Cieslik's motion for reconsideration was made under Rule 59, HRCP, and is permissible under Rule 59(e) as a motion to alter or amend judgment. *Anderson v. Oceanic Properties, Inc.,* 3 Haw. App. 350, 650 P.2d 612 (1982); 6 Pt. 2 Moore's Federal Practice and Procedure ¶ 56.26-1 (1982). Attached to Cieslik's motion is the affidavit of one David Walters. Also, on August 6, 1981, Cieslik filed his own affidavit. Those documents consisted entirely of matters which could and should have been presented prior to the determination of Intervenors' motion for summary judgment. While a motion for reconsideration is addressed to the court's discretion, *Anderson v. Oceanic Properties, Inc., supra,* it "will not lie to relitigate old matter." 6A Moore's Federal Practice ¶ 59.07 (1979).

In the case of *Seymour v. Potts & Callahan Contracting Co.*, 2 F.R.D. 38 (D.D.C. 1941), the court raised the question, "Should a court after determination of a matter on one state of facts be called upon to rehear the case on another state of facts existent and available at the time of the original hearing?" *Id.* at 39. The court then stated:

A great deal of time and labor was given by the court to a hearing and consideration of the original motion . . . .

. . . Although motions for rehearing ought not to be discountenanced, there has been a growing tendency here to treat them as an ordinary step in the course of a case; and this tendency, I think, should be discouraged. Too often we see motions to rehear of a purely repetitious nature. Again we find them predicated upon factual or legal grounds that could or should have been presented at the original hearing. In both instances they necessarily result in delay and wasted effort by court and counsel.

These comments are not intended as any criticism of counsel in this case. They are made only in an effort to discourage a growing tendency to abuse the use of the motion to rehear. It is a motion which has its proper use in our practice, but should be sparingly employed, only where unusual circumstances prevail.

*Id.* at 40.

We agree with the District of Columbia court that motions for reconsideration are very often based upon factual or legal grounds that could or should have been presented to the court prior to the determination of the summary judgment motion. The case at bar is a perfect example. If the transaction was in fact a usurious loan disguised as a sale and mandatory repurchase agreement, the facts to prove that defense were uniquely within the personal knowledge of Cieslik. He obviously took part in all negotiations and discussions and was aware of all the facts leading up to the agreement. It was incumbent on him, if he was serious about defending the motion for summary judgment on the grounds of usury, to present those facts to the court before it acted on the motion. Instead, Cieslik chose to rely on an answer which did not raise the affirmative defense, counsel's memorandum of May 13, 1981, and his conclusory affidavit of May 21, 1981. He should be held to his own tactical

judgment. *Frito-Lay of Puerto Rico, Inc. v. Canas,* 92 F.R.D. 384 (D.P.R. 1981).

The court below in ruling on Cieslik's motion held that the question of the usurious nature of the contract was a matter of law and denied Cieslik's motion, holding the agreement was not usurious. We hold that it is really a question of fact. *See Silver v. George,* 64 Haw. 503, 644 P.2d 955 (1982); *Dang v. F and S Land Development Corp., supra; Kawauchi v. Tabata,* 49 Haw. 160, 413 P.2d 221 (1966). Since the court arrived at the right result on the motion but for the wrong reason, we will not disturb the ruling. *See Survivors of Medeiros v. Maui Land and Pineapple Co.,* 66 Haw. 296, 660 P.2d 1316 (1983); *Hawaii Carpenters' Trust Fund v. Aloe Development Corp.,* 63 Haw. 566, 633 P.2d 1113 (1981). As stated earlier, Cieslik's motion for reconsideration was addressed to the sound discretion of the court. We think that under the circumstances in this case the denial of Cieslik's motion was not an abuse of discretion.

III.

In his first point of error, Cieslik alleges the court erred in granting an amended summary judgment "for a sum including a usurious rate" of interest. While the attack on the judgment is based on the usury defense, which we have held was not properly raised, we hold that the allegation of error is sufficient to allow us to examine the question of the propriety of the amount of damages awarded to Intervenors for Cieslik's breach.

Stripped to its bare essentials, the repurchase provision is an agreement of sale under which Cieslik obligated himself to purchase the property upon the occurrence of a condition precedent; i.e., his failure to rezone the property. Cieslik was required to make a "partial payment" through cancellation of both the $100,000 note and the note and mortgage, and through assignment of the Miles notes and deed of trust. Thereafter, he was required to pay the full balance due. Title to the undivided interest would remain with the Intervenors who could, under the agreement, sell the property "to obtain the balance of the monies due." Intervenors' action sought strict foreclosure of that agreement of sale.

In *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), the supreme court said:

> Strict foreclosure pursuant to the provisions of an agreement of sale has the effect of divesting the purchaser of his equitable interest in the property, as well as any right he may have to recover any moneys he has paid on account of the purchase price. Equity, however, abhors forfeitures and where no injustice would thereby result to the injured party, equity will generally favor compensation rather than forfeiture against the offending party. *Bohnenberg v. Zimmermann,* 13 Haw. 4 (1900); *Moran v. Holman,* 501 P.2d 769 (Alaska 1972); *Cf. Gonsalves v. Gilbert,* 44 Haw. 543, 356 P.2d 379 (1960).

*Id.* 58 Haw. at 596, 574 P.2d at 1341.

In a series of cases following *Jenkins, supra,* it has been held in this jurisdiction that, in cases involving a breach by the vendee of an agreement for the sale of land, a court of equity will grant relief from forfeiture where the vendee has been free from gross negligence or bad faith and the vendor can reasonably and adequately be compensated for his injuries. *Scotella v. Osgood,* 4 Haw. App. 20, 659 P.2d 73 (1983); *Ventura v. Grace,* 3 Haw. App. 371, 650 P.2d 620 (1982); *Gomez v. Pagaduan,* 1 Haw. App. 70, 613 P.2d 658 (1980); *see also, Kaiman Realty, Inc. v. Carmichael,* 2 Haw. App. 499, 634 P.2d 603 (1981), *rev'd in part,* 65 Haw. 637, 655 P.2d 872 (1982), *supplemented on reconsideration,* 66 Haw. 103, 659 P.2d 63 (1983).

Our review of *Jenkins, supra,* and its progeny indicates that, absent bad faith on the part of the vendee, the vendor in a land sales contract will not be allowed to retain the property in question and the partial payments made thereon, unless those payments approximate his actual damages. *Gomez v. Pagaduan, supra.* Also, absent bad faith, the vendor will not be allowed to effect a forfeiture where he may be fully compensated for his losses and where there will be no injustice to him. *Ventura v. Grace, supra.* The *Jenkins* line of cases do not discuss the converse question of the remedy that may be afforded where the vendee has in fact acted in bad faith. It appears that forfeiture of the vendee's interest in the property and the money he paid is a possible remedy where the result is

not unreasonable and unjust. *Cf. Scotella v. Osgood, supra.*

It appears, then, that in affording relief to the vendor in a land sales agreement the court must first determine whether the vendee acted in bad faith. *Scotella v. Osgood, supra.* Once that determination is made the court may fashion its relief.

In the instant case, the judgment of the court below was a "strict foreclosure pursuant to the terms of" the agreement of sale and was a forfeiture. Although under the terms of the decree any proceeds from the sale of the property after payment of the judgment were to be deposited with the court for further disposition, and Cieslik might be entitled to all or a part of those proceeds, we do not think that that fact elevates the judgment above the level of a forfeiture.

The relief granted by a court of equity is discretionary and will not be overturned on review unless the trial court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant. *Honolulu Federal Savings and Loan Ass'n v. Pao,* 4 Haw. App. 478, 668 P.2d 50 (1983). We hold that the court below disregarded the rule that forfeitures are to be avoided and the damages recovered by the vendor in a land sales agreement, absent gross negligence or bad faith, is limited to his actual damages. *Ventura v. Grace, supra.*

We agree that all of Intervenors' indebtedness to Cieslik was properly cancelled and the Miles notes and trust deed were properly ordered assigned to Intervenors. However, we find that, absent a finding of gross negligence or bad faith, it was an abuse of discretion to award Intervenors judgment in the amount of $557,507.08, while also terminating Cieslik's equitable title to the property.

Consequently, this matter will be remanded to the court below with instructions to determine if Cieslik's breach resulted from gross negligence or bad faith and to fashion an award based upon that determination in accordance with the principles stated above. In that regard, we note that perhaps the value of the subject undivided interest has increased to the point where Intervenors have not been harmed by Cieslik's breach. On the other hand, Intervenors' damages may be the difference, if any, between the value of the Orem, Utah, prop-

erty at the time of the exchange and the time of Cieslik's breach.[11]

The judgment is vacated and this matter is remanded for further proceedings in accordance with this opinion.

*Glenn K. Sato* and *Yoshio Shigezawa* on the briefs for Manfred Cieslik.

*S. V. Quitiquit* (*Cook, Choi, Quitiquit & Crudele* of counsel) on the brief for plaintiffs in intervention-appellees.

---

[11] In Lanet's deposition, he points out that the $220,800 difference between what Intervenors paid to Cieslik and what Cieslik was required to pay to repurchase the land was approximately 12%. That was the amount of annual appreciation in value they were experiencing on the Orem, Utah, property which was exchanged in order to get the Honokohau undivided interest.