**Electronically Filed
Supreme Court
SCWC-29851
19-AUG-2013
10:39 AM**

SCWC-29851

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

FRANCISCO ABADILLA, JR., Respondent/Plaintiff-Appellant,

vs.

SANFORD IWATA, Petitioner/Defendant-Appellee.

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 29851; CIVIL NO. 07-1-36)

MEMORANDUM OPINION
(By:  Recktenwald, C.J., Nakayama, Acoba, McKenna, and Pollack, JJ.)

We hold that inasmuch as the Circuit Court of the Third Circuit (the court)[1] granted summary judgment to Petitioner/ Defendant-Appellee Sanford Iwata (Defendant) apparently as to all theories of liability and with respect to all his capacities alleged in the amended complaint, in focusing on negligence and on wilful and wanton misconduct in Defendant's position as a co-employee of Respondent/Plaintiff-Appellant Francisco Abadilla,

---

[1]    The Honorable Greg K. Nakamura presided.

Jr. (Plaintiff), the Intermediate Court of Appeals (ICA) erred in vacating summary judgment without determining whether summary judgment was appropriately granted or not with respect to the other said theories of liability and the other capacities of Defendant.

Defendant seeks review of the March 15, 2013 ICA judgment filed pursuant to its January 31, 2013 Memorandum Opinion, and the Order of Correction filed on March 15, 2013, vacating and remanding the Final Judgment filed by the court entered on April 28, 2009.

I.

A.

The essential facts taken from the ICA's opinion follow.[2] "[Plaintiff] was employed by Sanford's Service Center, Inc. (SSC). . . . . SSC operated a rock quarry . . . and was in the business of supplying gravel, cinder, and soil. [Defendant] was the president and general manager of SSC and a co-employee of [Plaintiff]. [Defendant's] duties included serving as a supervisor, mechanic, job estimator, laborer, trainer, safety compliance officer, equipment operator, and driver. [Defendant] was responsible for safety training and compliance and took care of 'most of the maintenance and the field work.' As the operator of the rock quarry, SSC was governed by federal Mine Safety

_____

[2] For ease of reading, regular font is used for the long quotes in this section.

2

Health Administration (MSHA) regulations, and [Defendant] held a mining training certificate." Abadilla v. Iwata, No. 29851, 2013 WL 377301, at *1 (App. Jan. 31, 2013) (mem.).

"As part of its business, SSC owned and used a[n] . . . [Impactor] to crush larger rocks into smaller rocks or aggregate. [Plaintiff] was trained by [Defendant] regarding the maintenance of the Impactor. The Impactor crushed rocks as follows: Rocks were fed by a chute into the inner chamber of the Impactor, which contained a rotating impeller shaft to which metal bars [(known as "blow bars")] were attached. . . . [T]he rotating impeller would hit the rocks against fixed breaker plates causing the rocks to fracture into smaller pieces. The metal bars were held in place with wedges or chocks designed to prevent them from coming out during operation. The chamber was lined with high-chrome tiles that were bolted down. While in operation, the cover to the chamber was kept closed[.]" Id.

"During a prior incident which occurred several months before [Plaintiff] sustained his injuries . . . , the Impactor malfunctioned and 'exploded,' causing major damage to the Impactor." Id. at *2. "After the explosion, [Plaintiff] observed that the cover to the Impactor had opened up, and that pieces of the bar assembly were 'all over the place.' Jack Lee (Lee), an employee of SSC, believed that the explosion occurred when one of the blow bars 'got loose' in the Impactor. As a result of the malfunction/explosion, the impeller shaft, blow bars, and other parts of the machine were cracked or damaged and

3

a metal piece attached to the impeller shaft had broken off." Id.

"There is no indication that [Defendant] or SSC sought assistance from the manufacturer of the Impactor . . . or others in determining the exact cause of the Impactor's malfunction/ explosion. The damage to the Impactor was repaired in-house by SSC with the assistance of an outside welder[.]" Id. "At [Defendant's] direction, [the welder] welded a metal piece . . . onto the impeller shaft and fixed other cracks[.]" Id. "The welds were not tested[.]" Id.

"[Plaintiff] and other employees were instructed to weld worn locking wedges holding the metal bars in place, rather than replacing them with new locking wedges and bolts. [Plaintiff] warned [Defendant] that this practice was unsafe." Id. "[A] foreman at the company that previously owned the Impactor . . . explained that welding the wedges . . . would limit their usefulness and that the parts . . . would probably not 'stay tight.'" Id.

"After the Impactor was placed back into service, . . . the bearings holding the impeller shaft would run hot. [Defendant] was aware of this[.]" Id. "[Defendant] instructed [Plaintiff] to grease the Impactor every thirty minutes while the machine was running to get a better coverage with the grease, and so that the greasing would not slow down the process of crushing rock. [Defendant's] instruction was contrary to MSHA regulations, which generally require that maintenance and repair

4

on a machine only be performed after the power is off[.]" Id. "It was also contrary to the operating manual for the Impactor [that] . . . warned against over-lubrication because '[t]oo much lubrication will cause abnormally high operating temperatures.' [Defendant] was not aware of these . . . MSHA regulations and the operating manual." Id.

"On the day that [Plaintiff] was injured, he was greasing the Impactor while it was running in accordance with [Defendant's] instructions. . . . [T]he Impactor again 'exploded' and metal parts from within the Impactor flew outside the machine. [Plaintiff] was hit in the stomach by metal parts or pieces that broke off and were expelled from the Impactor, allegedly causing severe bodily injuries." Id. at *3. A co-worker "observed that the cover to the Impactor had been blown open during the explosion. Metal parts . . . to the impeller shaft had broken off, and . . . metal pieces . . . of the blow bars as well as the wedges or chocks, were outside the machine on the ground. [The co-worker] concluded that a blow bar that came loose or cracked caused the Impactor to explode, because a metal piece that fell inside the Impactor would cause damage to the machine." Id. "Prior to the explosion . . . one or two of the locks designed to hold the cover to the Impactor in place were missing or broken. According to [Plaintiff], . . . the parts that had been welded after the prior malfunction incident came apart while the Impactor was running." Id.

B.

Plaintiff filed an amended complaint on March 17, 2008. In pertinent part, the complaint stated:

### Count I

2.  [Defendant] has been . . . employed by [SSC].
. . . .
8.  Defendants[3] knew or should have known on and prior to May 17, 2005, that the impactor machine used by [Plaintiff] on property under their ownership and/or possession and/or control was mechanically unfit for use and was unsafe.  The injuries and damages alleged in paragraph 7, above, occurred as a direct and legal result of Defendants' negligence, jointly and severally, in providing a defective impactor machine for use by [Plaintiff] and/or said Defendants' negligence, jointly and severally, in permitting a hazard known to them to exist on property under their ownership and/or possession and/or control.
. . . .

### Count III

13.  Plaintiff incorporates by reference the allegations contained in Counts I and II, above.
14.  At all times material to this Complaint, [Defendant] and [Plaintiff] were employed by [SSC] and were co-employees.
15.  At all times material . . . [Defendant] was President of [SSC], and was charged with responsibility for providing inspection and/or maintenance and/or repair of heavy equipment and machinery, including the subject impactor machine[.]
16.  At all times material . . . [Defendant] was responsible for supervising [Plaintiff] and for ensuring proper safety procedures were followed in the operation, maintenance and repair of the heavy equipment and machinery, including the [impactor.]
17.  [Defendant] and [Doe] were also responsible . . . to ensure that operators of heavy equipment and machinery used by [SSC] were properly trained to operate heavy equipment and machinery.
18.  [Defendant] . . . negligently failed to properly inspect and/or maintain and/or repair the [impactor] and/or to ensure that only properly trained personnel operated the [impactor.]
19.  As a direct and legal result of the negligence of [Defendant] and/or Doe . . ., [Plaintiff] . . . suffered . . . injuries and damages[.]
. . . .

### Count V

22.  Plaintiff incorporates by reference the

_____

3    Other "Defendants" referred to unnamed "Doe" defendants.

> allegations contained in Counts I-IV, above.
> 23. The above described conduct of [Defendant] and/or [Doe] was committed recklessly and/or wantonly and/or in a grossly negligent manner and/or with a conscious indifference to the safety of [Plaintiff.]

(Emphases added.)

## II.

## A.

## 1.

On the motion for summary judgment as to Count I, Defendant argued that pursuant to HRS § 386-8 (1993)[4] and Iddings v. Mee-Lee, 82 Hawaiʻi 1, 919 P.2d 263 (1996), "employer immunity from negligence actions . . . is furthered by extension of immunity to co-employee suits based on negligence[,]" and thus, Defendant, as a co-employee, was immune from suit by Plaintiff. (Emphasis omitted.) Additionally, Defendant submitted an affidavit indicating "the impactor . . . is owned by [SSC,]" "he did not provide the impactor . . . to [Plaintiff,]" and "the property upon which [Plaintiff] . . . was allegedly injured was owned, possessed and/or controlled by [SSC.]"

Plaintiff briefly responded as to Count I that "[t]o the extent that [Defendant] is moving to dismiss any claims other than those based on negligence of a co-employee, he should be denied."

---

[4] HRS § 386-8 states, in relevant part, that "[a]nother employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct."

7

In his Reply, Defendant pointed out that as to "claims against [Defendant] . . . on his alleged negligence as a co-employee[, Defendant] does not oppose the dismissal of such claims pursuant to [HRS] § 386-8[,]" and that Plaintiff "failed to come forward with specific facts showing . . . there remains a genuine issue of fact with respect to" Defendant "not provid[ing] the impactor[,]" and Defendant "not own[ing], possess[ing], and/or control[ling] the property on which the accident occurred."

2.

On the motion for summary judgment as to Count III, Defendant maintained that based on Iddings, he had immunity from suit as a co-employee for negligently (1) inspecting, maintaining, or repairing the impactor, and (2) ensuring properly trained personnel operated the impactor. Defendant also argued that the allegation that as president of SSC, Defendant was liable for the conduct described above in (1) and (2), and for (3) supervising Plaintiff, and (4) ensuring safety procedures was followed in the operation, maintenance, and repair of the machinery, was barred by case law.

In his Memorandum, Defendant stated that "[c]ourts around the country have ruled that supervisory employees cannot be sued for a failure to provide a safe work place to the injured employee. The employer owes a non[-]delegable duty to provide a safe work environment. . . . The duty of proper supervision is a

8

duty owed by a corporate officer or supervisory employee to the employer, not to a fellow employee."

According to Defendant, "[t]he rationale of this principle 'is that workers' compensation is the exclusive remedy against an employer and, if there is a failure of an officer or employee to perform a duty owed to the employer, the employee's recourse is solely against the employer. When an officer or supervisor fails to perform the employer's duty, the failure is that of the employer, not the officer or supervisor.'" (Quoting Laffin v. Chemical Supply Co., 253 N.W.2d 51, 53 (Wis. 1977).) Defendant thus maintained he was entitled to summary judgment because any failures must be attributable to SSC, and not Defendant.

In response, Plaintiff maintained that "Defendant undertook certain responsibilities that transcended his duties as a corporate officer." Defendant's Response to Interrogatory states that "[his] duties and responsibilities are Mechanic (registered), supervisor . . . , trainer . . . [and] [s]afety compliance." (Emphases omitted.) Additionally, a report by SSC to the MSHA states that Defendant is the "Person with Overall Responsibility for a Health and Safety Program in All of the Operator's Mines."

In a further interrogatory, Defendant answered that he was one of the persons "responsible for the inspection and/or maintenance and/or repair of the subject machine[.]" Emphasis omitted.) According to Plaintiff, Defendant "was the employee of

9

SSC who had specific, admitted responsibilities [for] which Plaintiff is alleging he was grossly negligent[.]"

With respect to the non-delegable duty of providing a safe workplace, Plaintiff contended that Athas v. Hill, 476 A.2d 710 (Ct. App. Md. 1984), cited by Defendant, holds that "if a corporate office or supervisory employee is also a coemployee, the injured employee may maintain an action against the officer or employee. But if the officer or supervisor is merely acting on behalf of the employer in his capacity as a corporate officer, a personal action against him may not be maintained."[5] He also stated that Kruse v. Schieve, 213 N.W.2d 64 (Wis. 1973), cited by Defendant, indicated that "'[i]f the corporate officer . . . had not personally directed the particular operation to be done in a particular manner, there would have been no basis for holding that he had become a coemployee and owed a common-law duty to a fellow employee under the circumstances.'" (Quoting Kruse, 213 N.W.2d at 68.)

On December 8, 2008, the court granted Defendant summary judgment on Counts I and III.

B.

In his Motion for Summary Judgment on Count V, Defendant argued that to impose punitive damages against Defendant, "Plaintiff must prove by clear and convincing evidence, that there was a positive element of conscious wrong

---

[5]     The quote in Athas could not be located based on the citation.

doing, on the part of Defendant." According to Defendant, "Plaintiff does not allege any positive element of conscious wrongdoing" because Plaintiff alleges negligent acts, negligent omissions, and carrying on abnormally dangerous activity. (Emphasis in original.) Further, Defendant reiterated that he did not provide the impactor, own or possess the property on which the incident took place, and was not responsible for fulfilling the non-delegable duty of SSC to provide a safe place to work or safe machinery.

In his Memorandum in Opposition, Plaintiff maintained that, based on the court's Instruction No. 8.12, a defendant is subject to punitive damages when he "acted intentionally, willfully, wantonly, oppressively, or with gross negligence."

Further, Instruction No. 8.13 defines "wilful" as, inter alia, "indifference to . . . natural consequences." Plaintiff asserted that Defendant was indifferent to the natural consequences of welding broken parts rather than using new parts, failing to disclose to the manufacturer's representative the prior explosion and makeshift repairs, failing to disclose to the MSHA inspector the prior explosion, and ordering greasing of the impactor while it ran.

Attached to Plaintiff's memorandum was a declaration by Plaintiff which indicated Defendant had contact with Plaintiff in connection with the incident, and that welding used parts caused the impactor to explode. The declaration stated, in part, that:

11

> 5. [Defendant] showed [Plaintiff] how to apply grease while the impactor was running, and in fact, ordered me to do so.
> 6. [Defendant] told [Plaintiff] to grease the impactor while it was still running so that it would not slow down the process of crushing rock.
> . . . .
> 8. Prior to [Plaintiff's] accident, the impactor exploded resulting in the shaft, blow bars and other parts breaking. . . .
> 9. [Defendant] also instructed me and other employees to weld worn locking wedges in place instead of replacing the used and worn locking wedges and its locking bolts with new and safer locking wedges and bolts after [Plaintiff] informed [Defendant] on numerous occasions that these new wedges and bolts were needed because the worn parts were unsafe. . . .
> 10. After the aforesaid parts were welded, the impactor did not run smoothly but would vibrate and the bearings holding the shaft would run hot. [Defendant] was aware of this. That is the reason why [Defendant] instructed [Plaintiff] to apply grease to the machine continuously . . . .
> 11. . . . photographs of the impactor . . . showed the shaft, blow bars and other parts of the impactor discussed above after the explosion. Those photographs show that the shaft assembly broke where it had previously been welded by the other employee and the outside welding contractor . . . .
> . . . .
> 17. In [Plaintiff's] opinion, the cause of the explosion was because the parts that were previously repaired by welding came apart while the impactor was running.

In his Reply, Defendant contends "[Plaintiff] fail[ed] to respond by affidavit or otherwise setting forth specific facts showing a genuine issue of material fact with respect to his claim for punitive damages[,]" and that instructions are not court-approved. (Citing K.M. Young & Assocs. v. Cieslik, 4 Haw. App. 657, 675 P.2d 793 (1983).) Rather, he maintains "[i]n contrast, to justify an award of punitive damages, 'a positive element of conscious wrongdoing is always required . . .,'" (citing Masaki v. General Motors Corp., 71 Haw. 1, 7, 780 P.2d 566, 570-571 (1989)), and Defendant "did not own or provide the . . . impactor[,]" "did not own, possess or control the property

12

upon which the accident occurred[,] and "[t]he duties that were alleged breached . . . as the basis of Count III . . . were non[-]delegable duties of [SCC] and . . . not duties . . . owed by [Defendant]."

On December 8, 2008, the court granted summary judgment in favor of Defendant as to Count V.

III.

The ICA issued its Memorandum Opinion on January 31, 2013, and vacated the court's grant of summary judgment against Plaintiff as to Counts I, III, and V of the First Amended Complaint. Abadilla, 2013 WL 377301, at *1. In its analysis, the ICA first stated that there was no dispute that Plaintiff sustained a work-related injury and Defendant was Plaintiff's co-employee. Id. at *4. Under Iddings, the ICA noted, Hawaiʻi's workers' compensation law, HRS Chapter 386, bars suits by an injured worker against co-employees on a theory of negligence. Id. However, it held that, also pursuant to Iddings, HRS §§ 386-5 (1993) and 386-8 do not bar suit and establishment of liability on a theory of wilful and wanton misconduct. Id. Thus, the ICA focused in its decision on "whether there were genuine issues of material fact concerning whether Plaintiff was injured as the result of [Defendant's] wilful and wanton misconduct." Id.

The ICA reviewed the test set out by this court in Iddings for the "wilful and wanton misconduct" exception to co-employee immunity in HRS § 386-8, and applying the test to the

13

facts of the instant case, as well as analogizing to the facts in Iddings, the ICA concluded that "when the evidence is viewed in the light most favorable to Plaintiff, there were genuine issues of material fact regarding whether [Defendant] engaged in wilful and wanton misconduct . . . ." Id. at *5. The ICA thus held, "the [ c]ourt erred in granting summary judgment in favor of [Defendant] on Counts I and III." Id. at *7.

The ICA next addressed Count V, quoting this court's statement in Iddings that "'tortious conduct meriting the imposition of punitive damages and tortious conduct falling within the exception to co-employee immunity in HRS § 386-8 are measured by similar terms[.]'" Id. at *7 (quoting Iddings, 82 Hawaiʻi at 9 n.6, 919 F.2d at 271 n.6). On this basis, the ICA concluded that "[b]ased on our analysis that there were genuine issues of material fact regarding whether [Defendant] engaged in wilful and wanton misconduct which caused [Plaintiff's] injuries, we conclude that there were also genuine issues of material fact regarding [Plaintiff's] claim for punitive damages." Id.

The ICA vacated the court's judgment as to Counts I, III, and V. Id.

IV.

Defendant presents the following questions in his Application:

> 1. Whether the ICA erred in vacating the entry of judgement against [Plaintiff] on Count I (negligent providing a defective impactor machine and negligent permitting a hazard known to exist on the premises) of the first amended complaint.

14

2.      Whether the ICA erred in vacating the entry of
        judgment against [Plaintiff] on Count III (negligent
        failed to properly inspect and/or maintain and/or
        repair the subject impactor machine and negligent
        failed to ensure that only properly trained personnel
        operated the subject impactor machine) of the first
        amended complaint.

3.      Whether the ICA erred in vacating the entry of
        judgment against [Plaintiff] on Count V (punitive
        damages) of the first amended complaint.

(Emphases added.)

On April 29, 2013, Plaintiff filed an "Answer" which very briefly and generally argued that Defendant failed to cite "grave errors of law or fact or obvious inconsistencies with controlling case law, [and that] Defendant essentially argued" the ICA "did not interpret or apply Iddings[], 82 Hawai'i 1, 919 P.2d 263 [], as Petitioner argued."

On May 6, 2013, Defendant filed a Reply essentially reiterating his positions before the court and the ICA.

V.

The standard to apply on a motion for summary judgment is as follows:

> Summary judgment is appropriate if the pleadings,
> depositions, answers to interrogatories and admissions on
> file, together with the affidavits, if any, show that there
> is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law. A
> fact is material if proof of that fact would have the effect
> of establishing or refuting one of the essential elements of
> a cause of action or defense asserted by the parties. The
> evidence must be viewed in the light most favorable to the
> non-moving party. In other words, we must view all of the
> evidence and inferences drawn therefrom in the light most
> favorable to the party opposing the motion.

Ralston v. Yim, 129 Hawai'i 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (quoting First Ins. Co. of Hawai'i v. A & B Props., Inc.,

15

126 Hawaiʻi 406, 413-14, 271 P.3d 1165, 1172-73 (2012)) (emphasis added)(citations and brackets omitted). "'On appeal, the standard of review for the granting of summary judgment is identical to that applicable to the trial court's consideration of the motion.'" Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawaiʻi 201, 211, 166 P.3d 961, 971 (2007) (quoting Lansdell v. County of Kauaʻi, 110 Hawaiʻi 189, 194, 130 P.3d 1054, 1059 (2006)) (citation omitted). Thus, "in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." Id. (quoting id.) (other citation omitted).

VI.

With respect to the first question, Defendant makes three arguments concerning Count I.

A.

Defendant first argues that he "did not provide the impactor machine for use by [Plaintiff] or own the property on which it was operated." According to Defendant, Plaintiff "concedes that he was employed by SSC and that the subject . . . machine was owned by SSC at the [relevant] time[.]" [Id.] Defendant "did not provide the . . . machine for use by [Plaintiff]" and Defendant "did not own, possess or control the property on which [Plaintiff] was working[,]" but was "possessed and/or controlled by SSC, [Plaintiff's] employer." Indeed, the

16

amended complaint alleged that at the time of the incident the "machine [was] owned by [SSC] which was being used to crush rock on property owned by Doe Defendants."  Thus, Defendant is correct insofar as the complaint did not allege that Defendant, in his individual capacity, owned the machine.  Rather, it was averred that SSC owned the machine and that "Doe Defendants" rather than [Defendant] owned the premises.

The ICA did not determine whether there were any genuine issues of material fact regarding Defendant's declaration that he did not own the impactor, that he did not provide the impactor, and that he did not own or possess the property on which the incident took place, in connection with the allegations.  If there were no genuine issues of material fact regarding these issues, then Defendant would be entitled to summary judgment as to such claims of liability.  Thus, insofar as the ICA vacated summary judgment, see Abadilla, 2013 WL 377301, at *7, it did so without deciding to what extent such acts were encompassed within its holding.  The ICA did not make any determination as to whether there were genuine issues of material fact or if these issues were determined by law in vacating the court's summary judgment order as to Count I in its entirety.

B.

Second, Defendant argues "[HRS] § 386-8 precludes claims for negligence against [Defendant]" because Plaintiff and

17

Defendant "were employed by SSC and were co-employees." He cites to that part of the statute which reads as follows:

> When a work injury for which compensation is payable under this chapter has been sustained under the circumstances creating in some person other than the employer or <u>another employee of the employer acting in the course of his employment</u> a legal liability to pay damages on account thereof; the injured employee or his dependents . . . may claim compensation under this chapter and recover damages from such third person.

(Emphasis in original) (Citing HRS § 386-8). Further, he states that the Hawaiʻi Supreme Court has declared that:

> [O]ne of the primary purposes underlying the implementation of a workers' compensation scheme in Hawaiʻi was to eliminate suits based on negligence in the work-place and to spread the costs of work-related injuries over the industry.

(Citing <u>Iddings v. Mee-Lee</u>, 82 Hawaiʻi 1, 7-8, 919 P.2d 263, 269-270 (1996).)

Defendant maintains that "since [Plaintiff's] claims in Count I against his co-employee [Defendant] are based solely on [Defendant's] negligence[,]" "[t]he ICA erred in vacating the entry of judgment against [Plaintiff] on Count I[.]" To the contrary, the ICA held that Defendant, as a co-employee of Plaintiff, was protected from liability based on a theory of negligence. <u>Abadilla</u>, 2013 WL 377301, at *7. However, the ICA made no separate determination as to whether a genuine issue of material fact existed regarding whether Defendant was liable to Plaintiff based on a theory of negligence in a capacity other than that as co-employee, such as President of SSC or owner of the land where the incident occurred.

18

C.

Third, Defendant alleges he "is entitled to judgment with respect to Count I" on the ground that "any genuine issue of material fact related to . . . the alleged improper repair and maintenance of the Impactor and the alleged improper instruction to grease the machine while running is not pertinent to [the] allegation in Count I . . . and permitting a [] hazard . . . on property allegedly under his ownership, possession, or control." However, the ICA did not determine whether there were genuine issues of material fact regarding whether Defendant owned the impactor, provided the impactor to Plaintiff, or owned or possessed the property in question or if these issues were determined by law in its vacation of the court's summary judgment order as to Count I in its entirety.

VII.

With respect to the second question, Defendant maintains "[t]he ICA erred in vacating the entry of judgment against [Plaintiff] on Count III[.]" His first contention is that HRS § 386-8 precludes claims for negligence with respect to "inspect[ing] and/or maintain[ing] and/or repair[ing] the . . . machine; and/or ensur[ing] . . . properly train[ing] personnel [who] operated the . . . impactor[.]" Defendant points out that Plaintiff "merely asserts a claim for negligence in Count II" and Defendant, "as a co-employee of [Plaintiff], is immune from

negligence actions." (Quoting Iddings, 82 Hawai'i 1, 919 P.2d 263.)

Additionally, according to Defendant, Plaintiff "alleges in Count III" that Defendant, as president of SSC, "was responsible for carrying out the employer's general obligation of providing a reasonably safe place to work and furnish reasonably safe . . . machinery." As noted before, Defendant maintained that "'workers' compensation is the exclusive remedy against an employer and, if there is a failure of an officer or employee to perform a duty owed to the employer, the employee's recourse [such as plaintiff's] is solely against the employer [such as SSC].'" (Citing Laffin, 253 N.W.2d at 53.) Thus, Defendant argues the "supervisory employees cannot be sued for a failure to provide a safe work place to the injured employee." "[T]he duties [Plaintiff] alleges that [Defendant] breached were duties owed by SSC and not a co-employee."

This argument was raised in Defendant's memorandum in support of his motions for summary judgment at trial and in his Answering Brief before the ICA. However, the ICA did not decide whether genuine issues of material fact existed as to this defense or whether the defense failed as a matter of law in vacating the court's summary judgment order in its entirety.

Further, with respect to Count III, Defendant argues that Plaintiff's "arguments of wilful and wanton misconduct on the part of [Defendant] is misplaced." Defendant asserts that

20

"Defendant's knowledge of the risk of injury to [Plaintiff] stemming from the alleged improper repair and maintenance of the Impactor and the alleged improper instruction to . . . grease the machine while running has no bearing on this case because there is no evidence" that the alleged misconduct "caused the machine to malfunction."  According to Defendant, he "established that there was no evidence to support [Plaintiff's] assertion that" these matters "caused the Impactor to malfunction," because Plaintiff presented no expert testimony or evidence to establish" liability that these matters "caused the Impactor to malfunction."

Defendant declares that "[Plaintiff's] concession that he essentially did not know whether the repair or maintenance of the machine caused his injuries were made after the trial court initially heard [Defendant's] motion for summary judgment and gave [Plaintiff] approximately 5 months to supplement his position[.]"  Rather, Defendant points out that Plaintiff "relies on his own lay opinion that 'the cause of the explosion was because the parts that were previously repaired by welding came apart while the impactor was running.'"

This argument was raised before the court in Defendant's memorandum in support of his motion for summary judgment and in Defendant's Answering Brief before the ICA. However, the ICA did not expressly determine whether genuine issues of material fact remained as to this defense, or whether

21

the defense failed as a matter of law in vacating the court's summary judgment order as to Count III in its entirety.

VIII.

Finally, Defendant asserts "the ICA erred in vacating the entry of judgment against [Plaintiff] on Count V (punitive damages)." As to this claim, Defendant argues that Plaintiff "does not allege a positive element of conscious wrongdoing on the part of [Defendant]." Defendant maintains a "claim of wilful and wanton misconduct" is "[in]sufficient to preserve . . . punitive damages." Moreover, Defendant declares Plaintiff is "incapable of presenting evidence to support his claim of wilful and wanton misconduct" by Defendant on the grounds set forth above.

Based on Iddings, wilful and wanton conduct of a co-employee may give rise to punitive damages. Iddings, 82 Hawaiʻi at 8, 919 P.2d at 270. Accordingly, as to Count V, the ICA did not gravely err in deciding summary judgment must be vacated as to that count inasmuch as the ICA decided genuine issues of material fact existed for such conduct.

IX.

The court entered summary judgment orders on Counts I, III and V. Accordingly, the court orders granted summary judgment for Defendant on all theories of liability and in all capacities alleged in the amended complaint with respect to the said counts. In its holding, the ICA vacated the summary

22

judgment orders in their entirety. Abadilla, 2013 WL 377301, at *7. However, the ICA only decided that there were genuine issues of material fact regarding the alleged wilful and wanton conduct of Defendant in his capacity as a co-employee. Presumably, this is because the ICA determined that under Iddings, HRS § 386-8 allowed actions against a co-employee for wilful and wanton misconduct. Id. at *5.

Hence, the ICA did not decide whether genuine issues of material fact existed or not regarding the other theories of liability alleged and other capacities in which Defendant acted, as alleged in the amended complaint.[6] Yet, the ICA vacated the entirety of the orders granting summary judgment on Counts I and III. See id., at *7. In doing so, the ICA did not address, for example, Defendant's argument that he was not liable as an officer or as a supervisor for furnishing a safe place to work and reasonably safe machinery, or that there was no expert testimony that the alleged acts of Defendant caused the Impactor to malfunction. As to this last defense, it is also unclear whether the question of wilful and wanton misconduct would be abrogated by the question of causation, i.e. whether the conduct of Defendant was not the cause of the impactor exploding, as posed by the Defendant. Therefore, the case is remanded to the

_____

[6] Defendant was "the president and general manager of SSC and co-employee of [Plaintiff]," who served as "supervisor, mechanic, job estimator, laborer, trainer, safety compliance officer, equipment operator, and driver[,]" and "responsible for safety training and compliance and . . . 'most of the maintenance and the field work.'" Abadilla, 2013 WL 377301, at *1.

23

ICA to decide, wilful and wanton liability aside, 1) what other theories of liability, if any, were subject to summary judgment and 2) in what capacities, that of co-employee aside, Defendant was entitled to summary judgment, if any.

DATED:  Honolulu, Hawaiʻi, August 19, 2013.

| | |
|---|---|
| Gregory K. Markham,<br>Keith K. Kato,<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Steven K. Hisaka,<br>for respondent | /s/ Simeon R. Acoba, Jr. |
| | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |

